```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
```

In the matter of Rafal Skrodzki and Natalia
Nicole Skrodzka; infants under the age of 16,

ROBERT SKRODZKI,

                Petitioner,

-against-

EWA SKRODZKA,

                Respondent.
```
------------------------------------------------------------X
```

**MEMORANDUM AND ORDER**
06-CV-3428 (JMA)

FILED
IN CLERKS OFFICE
U.S. ----- COURT E.D. N.Y:
★ JUL 2 2007 ★
P.M. _____
TIME A.M. _____

APPEARANCES:

    Eva Cole, Esq.
    Dewey Ballantine LLP
    1301 Avenue of the Americas
    New York, NY 10019
    *Attorney for Petitioner*

    Josephine Flores, Esq.
    The Legal Aid Society
    120-46 Queens Boulevard
    Kew Gardens, NY 11415
    *Attorney for Respondent*

**AZRACK, United States Magistrate Judge:**

Petitioner Robert Skrodzki files this petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 25, 1980, reprinted in 51 Fed. Reg. 10,494 (March 26, 1986) and implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 (2004), seeking the return of his children, Rafal and Natalia Nicole Skrodzki, to Poland. The children currently reside with their mother, respondent Ewa Skrodzka, in

1

New York. The parties filed cross-motions for summary judgment and consented to have me preside over these motions pursuant to 28 U.S.C. § 636(c). I heard oral arguments on the cross motions on April 23, 2007. For the reasons set forth below, petitioner's motion is granted and respondent's motion is denied.

## I. BACKGROUND

The parties have together submitted a Stipulated Statement of Undisputed Law and Fact, and Joint Exhibits Submitted in Support of Cross Motions for Summary Judgment; all facts are derived from those stipulations unless otherwise noted.

Petitioner Robert Skrodzki and Respondent Ewa Skrodzka are both Polish citizens. (Stipulated Joint Statement of Undisputed Law and Fact ("Stip.") ¶¶ 1, 5.) The parties married in Poland on February 20, 1993. (Stip. ¶ 9.) Their son, Rafal, was born in Poland on June 6, 1994 and is a Polish citizen. (Id. ¶ 12.) Their daughter Natalia was born in the United States on March 23, 2002 and then returned to Poland one month later. (Id. ¶¶ 14, 19.) Natalia is therefore a citizen of both Poland and the United States. (Id. ¶ 15.) There is no dispute between the parties that the children were raised in Poland and lived there until their removal to the United States on July 15, 2005. (Id. ¶¶ 18, 20.) The children have a network of family and friends in Poland: their grandparents, paternal aunts and uncles and numerous extended cousins all reside in Poland. (Id. ¶ 21.)

In the years leading up to and following Natalia's birth, petitioner traveled to the United States on a limited number of occasions to seek employment. (Stip. ¶ 4.) Respondent claims that on several occasions, petitioner remained in the United States for several months and, on one

occasion, for more than a year while working. (Decl. of Ewa Skrodzka in Support of Motion for Summary Judgment ("Skrodzka Decl.") ¶ 12.)

On May 21, 2004, respondent filed a divorce petition in the Regional Court in Lomza, Poland (the "Regional Court"). (Stip. ¶ 25.) The Regional Court issued a divorce decree on September 14, 2004, granting the parties a divorce without a ruling of fault. (Id. ¶ 28.) This divorce decree also granted both parties parental authority over the children, but dictated that the children would reside with respondent. (Id. ¶¶ 29, 30.) During the divorce proceeding, respondent testified before the Regional Court that she would notify petitioner of any trips that she took with the children outside of Poland, and that she did not intend to leave Poland. (Id. ¶¶ 33, 34.) She also testified that she "will not hinder [petitioner] from visiting the children; he can always see the children whenever he wants" and that she "does not intend to take the children anywhere outside Poland without [petitioner's] consent." (Joint Exhibits Submitted in Support of Cross Motions for Summary Judgment ("Joint Ex.") C at 2, 4.) The parties created an informal visitation schedule, and petitioner regularly saw the children on one weekday and one weekend day each week, and on holidays. (Stip. ¶ 36.) Petitioner played with the children and engaged in various activities with them during his visits. (Id. ¶ 37.) Petitioner also paid child support to respondent each month. (Id. ¶ 38.)

Respondent and the children traveled from Poland to the United States on July 15, 2005, and have remained in New York until the present day. (Stip. ¶ 40.) Respondent entered the United States with a B-1 visa for temporary visitors; Rafal entered with a B-2 visa; and Natalia entered with her United States passport. (Joint Ex's P, Q, R.) Respondent did not inform petitioner that she planned to remove the children from Poland. (Stip. ¶¶ 35, 40.) When petitioner realized that

3

respondent and the children were gone from their home, he filed a charge against respondent with the Lomza City Police Department for the abduction of their children. (Joint Ex.'s E, F.) Respondent claims that petitioner went to her place of employment with the police and made accusations of child abduction against her; this, she contends, made her employer uneasy and so he immediately fired her. (Skrodzka Decl. ¶ 27.) Petitioner then contacted respondent's sister in New York, who confirmed that respondent and the children had traveled to New York and were staying at her residence. (Stip. ¶ 41.)

On July 21, 2005, petitioner filed a Petition to Regulate Visitations with the Lomza District Court ("District Court"). (Stip. ¶ 42.) Petitioner then submitted a Request for Return of the Children to the Ministry of Justice in Poland on August 1, 2005. (Stip. ¶ 44.) On August 8, 2005, Judge Leszek Kuziak of the Polish Ministry of Justice issued a letter to the National Center for Missing and Exploited Children in the United States. (Joint Ex. G.) Judge Kuziak's letter asks judicial authorities in the United States to take measures to return the Skrodzka children to Poland as quickly as possible. (Id.) The letter additionally states that because both parents have joint parental responsibility for the children, under Article 97 of the Polish Family and Guardianship Code respondent was not eligible to remove the children without petitioner's consent. (Id.)

The District Court of Lomza held a hearing regarding petitioner's Petition to Regulate Visitations on February 28, 2006. (Stip. ¶ 45.) Respondent was not present, but both parties were represented by counsel. (Id.) Respondent's attorney stated that respondent "did not intend to return to Poland in the upcoming months." (Joint Ex. L.) Respondent's attorney did not, however, indicate that respondent wanted to reside permanently in the United States with the children. (Id.) Petitioner

4

claims that at the time of the proceeding he believed that respondent's trip to the United States was temporary. (Declaration of Remigiusz Fabianski ("Fabianski Decl.") ¶ 22.)

On March 7, 2006, the District Court entered a final order on the Petition to Regulate Visitations. (Joint Ex. K.) This order stated that petitioner could "visit the children at their mother's, Ms. Ewa Skrodzka's, place of residence" "each Wednesday from 4:00 to 7:00 pm," "each Saturday from 1:00 to 5:00 pm," "each Christmas Day from 10:00 to 5:00 pm" and "each Easter Monday from 10:00 to 5:00 pm." (Stip. ¶ 49; Joint Ex. K.) The decision also provides that "the children may spend the second week of August with their father but within the territory of their mother's country of residence." (Joint Ex. K.)

Respondent claims that on learning that she had lost her job in Poland, she decided to remain in the United States with the children. (Skrodzka Decl. ¶ 27.) She has since enrolled the children in school in New York. (Skrodzka Decl. ¶¶ 28, 29.) On January 26, 2006, respondent changed her visa class to F-1, for academic students. (Joint Ex. P.) Respondent works at a bakery, but plans to become a registered nurse in New York. (Skrodska Decl. ¶ 33.)

Petitioner filed the instant petition seeking return of the children under the Hague Convention on July 13, 2006. The parties submitted cross-motions for summary judgment on January 9, 2007. Petitioner argues that respondent violated his custodial rights, and therefore violated the Hague Convention, when she removed the children to the United States without his consent. Respondent claims, however, that petitioner did not have custody rights to the children under the divorce decree, and thus she did not violate the Convention by removing the children. Respondent further contends that the District Court's March 7 decision ordering petitioner to visit within respondent's country

of residence reaffirmed her right to decide where the children should reside. Finally, respondent claims that, even if petitioner had custody rights to the children, two of the Convention's exceptions that prohibit the return of the children apply in this case.

## II. DISCUSSION

1. Standards

A. Summary Judgment

The standard for granting summary judgment is well established. Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994), but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

In determining whether any material facts are in dispute, the court "must view the evidence

in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.1993)); see also Anderson, 477 U.S. at 255. To defeat a properly supported motion for summary judgment, the non-moving party must "'set forth specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must come forth with "significant probative evidence" demonstrating that a factual dispute does in fact exist. Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citations omitted).

B. Hague Convention

The Hague Convention, to which the United States and Poland are signatories, was adopted in 1980 "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, Preamble, 51 Fed. Reg. at 10,498; see Gitter v. Gitter, 396 F.3d 124, 129 (2d Cir. 2005). The Convention places at the head of its objectives "the restoration of the status quo, by means of 'the prompt return of children wrongfully removed to or retained in any contracting state.'" Id. at 130. Under the Convention, this Court has the authority to determine the merits of

an abduction claim but not the merits of the underlying custody claim. See Diorinou v. McKenzie, 237 F.3d 133, 140 (2d Cir. 2001).

In order to prevail on a claim under the Hague Convention, petitioner must show (1) the child was habitually resident in one state and has been removed to or retained in another state; (2) the removal or retention was in breach of petitioner's "custody rights" under the law of the state of habitual residence; and (3) petitioner was exercising those custody rights at the time of removal or retention. Gitter, 396 F.3d at 130-31. The Hague Convention does not specifically define "custody rights." However, Article 5 of the Convention has described custody rights as entailing "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5(a), 51 Fed. Reg. at 10,498. In addition, the Second Circuit has interpreted the term "custody" to include "the primary duty and ability to choose and give sustenance, shelter, clothing, moral and spiritual guidance, medical attention, education, etc., or the (revocable) selection of other people or institutions to give these things." Croll v. Croll, 220 F.3d 133, 138 (2d Cir. 2000).

To determine whether a petitioner possessed custody rights over his or her children, the Hague Convention requires courts to rely on the law of the State in which the child was habitually resident immediately before their removal. See Hague Convention, art. 3; Koc v. Koc, 181 F. Supp. 2d 136, 148 (E.D.N.Y. 2001). It is undisputed that the children were habitual residents of Poland before they were removed: they had lived continuously in Poland before their mother brought them to the United States. See Croll, 220 F.3d at 135 (finding habitual residence was country where child was born and resided exclusively before removal). Thus, Polish law is applicable. I will therefore

turn to Polish law to determine whether petitioner held rights of custody when the children were removed from Poland.

C. Polish Law

Respondent and petitioner each submitted affidavits from experts on Polish family law. (See Declaration of Natalia Olowska-Zalewska ("Olowska-Zalewska Decl."); Expert Opinion of Zbigniew Banaszczyk and Bartlomiej Jankowski ("Banaszczyk-Jankowski Expert Op."). These experts, however, cite to conflicting authority in opining whether petitioner held custody rights to the children before they were removed. (Olowska-Zalewska Decl.; Banaszczyk-Jankowski Expert Op.).

Respondent cites to the Polish Constitution and the Polish Civil Code to support her position. As respondent notes, the freedom of movement provision in the Polish Constitution grants her the right to choose her place of residence inside or outside of Poland. (Banaszczyk-Jankowski Expert Op. 7, citing Polish Constitution Art. 52 § 1.) In addition, Article 26, § 2 of the Polish Civil Code defines "place of residence" by stating that the place of residence of a child whose parents reside separately but share parental authority is with the parent with whom the child resides permanently. (Banaszczyk-Jankowski Expert Op. 8, citing Polish Civil Code, Art. 26 § 2.) Because she has the constitutional right to live outside Poland, and under Article 26, § 2, the children's place of residence corresponds with hers, respondent contends that she had the right to remove the children to her place of residence outside of Poland.

I agree with petitioner, however, that the above-mentioned provisions to do not speak to respondent's right to choose the children's country of residence without petitioner's approval.

Although the Constitution grants *respondent* the right to leave Poland, and the Civil Code defines the children's place of residence as with the parent with whom they reside, it does not necessarily follow that the provisions give respondent the unilateral right to determine where the children will reside. This interpretation is supported by the highest court in Poland, which states that Article 26 "does not exclude the need to specifically decide on the place of residence." (Fabianski Decl. ¶ 7, Ex. B: Resolution of the Supreme Court of Nov. 10, 1971, III CZP 69/71). The Polish Supreme Court has also determined that a divorce decree that grants both parties parental authority, but rules that the child is to live with one parent, does not restrict the non-custodial parent's rights to co-decide a child's place of residence. (Banaszczyk-Jankowski Expert Op., Ex. 4: Judgment of the Polish Supreme Court of March 6, 1985 III CRN 19/85.)

Petitioner contends that Article 97 of the Polish Family and Guardianship Code is more applicable to this case than the Polish law provisions to which respondent cites. Under Article 97, if parental authority is vested in both parents, each parent is obligated and authorized to exercise this authority. (Olowska-Zalewska Decl. 3-4, citing Family and Guardianship Code, Art. 97 § 1.) Article 97, § 2 requires that vital matters be resolved jointly by both parents or, in the absence of an agreement, be resolved by a guardianship court. (Olowska-Zalewska Decl. 4, citing Family and Guardianship Code, Art. 97 § 2.) While the Family and Guardianship Code does not define "vital matters," Polish Supreme Court decisions make clear that the child's place of residence is a vital matter to be decided by both parents. (Olowska-Zalewska Decl. 5, citing Resolution of the Supreme Court of Nov. 10, 1971, III CZP 69/71; Judgment of the Supreme Court of Mar. 6, 1985, III CRN 19/85.) Hence, Article 97 is the applicable law in this case.

3. <u>Analysis</u>

A. <u>Custody Rights Under the Divorce Decree</u>

Turning to the facts, I find that respondent violated the Hague Convention when she unilaterally removed the children to the United States. First, it is undisputed that the children were habitual residents of Poland and that they were removed by their mother to another state, the United States.

Second, it is clear petitioner was exercising his rights of custody before the children were removed. According to the stipulated facts, petitioner visited with the children one weekday, one weekend day, and holidays while they were in Poland. Petitioner played with the children and engaged in activities with them during his visits, and also paid child support to respondent each month. In fact, one day after the children's removal, petitioner arrived at respondent's home for a scheduled visit. Accordingly, petitioner was exercising his rights of custody at the time of removal. See Armiliato v. Zaric-Armiliato, 160 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (holding rights of custody exercised where petitioner was in contact with the child and visited her regularly).

Third, I find that respondent's removal of the children was a breach of petitioner's custody rights under the law of Poland, the state of the children's habitual residence. As stated above, under Article 97 of the Family and Guardianship Code, vital matters must be resolved jointly by the parents or, in the absence of an agreement, be resolved by a guardianship court. The children's place of residence is just such a vital matter. Respondent violated this law when she unilaterally decided to alter the children's country of residence without informing petitioner. In fact, Judge Leszek Kuziak of the Polish Ministry of Justice, having full knowledge of the custody terms of the Lomza District

11

Court's divorce decree, made the same assessment when he cited Article 97 in requesting that the National Center for Missing and Exploited Children aid in returning the children to Poland. (See Joint Ex. G.) By removing the children without consent from petitioner or a determination by a guardianship court, respondent violated petitioner's custody rights. I also note that respondent violated an agreement with petitioner, expressed under oath during the divorce decree, that she would tell petitioner if and when she removed the children from Poland. For the above reasons, respondent violated the Hague Convention, and the children must be returned to Poland.

B. The March 7 Visitation Order

Respondent contends that, even if petitioner was granted custody rights under the divorce decree, respondent's right to determine the children's country of residence was affirmed by the District Court of Lomza's March 7, 2006 visitation order. (See Joint Ex. K.) This March 7 visitation order granted petitioner weekly contacts with the children "at respondent's place of residence" and two weeks of vacation in August with the children "in their mother's country of residence." (Id.) Respondent contends that the District Court judge knew that respondent was living in the United States with the children when the Court issued the order. (Resp't Memo. in Supp. of Summ. J. 17.) Respondent also notes that the District Court made no finding that respondent was in violation of Polish law or the divorce decree by removing the children from Poland. (Id. at 16.) She argues, therefore, that by ordering visitation to occur at her "place of residence" and making no finding of illegality on the part of the respondent, the District Court affirmed her right to decide where the children should reside. (Id.)

Contrary to respondent's assertions, however, the District Court of Lomza's March 7

visitation order does not support respondent's right to unilaterally remove the children to the United States. First, the March 7 decision is of dubious relevance as it was issued nearly eight months after the removal. Thus, by the time of the hearing respondent had already violated the Hague Convention by removing the children. Second, the March 7 decision does not limit petitioner's or affirm respondent's rights because it is silent on the issue of who has the power to choose the children's place of residence. It does not, therefore, determine respondent's rights as a matter of law.

To the contrary, the District Court's order responded to what was requested by petitioner in his Petition to Regulate Visitations: it formalized the visitation schedule that was previously in effect in anticipation of respondent's return to Poland. Petitioner claims that at the time of the proceeding he believed respondent's trip to the United States was temporary. It is clear from petitioner's relentless efforts to gain custody of his children that his intent was to have his children returned to Poland. Therefore, the March 7 decision provided petitioner with exactly what he had requested: a formal visitation schedule with the children in Poland once they returned, with a visit in the United States before they returned. Furthermore, the District Court could not have known that respondent would remove the children permanently to the United States: at the February 28 hearing, respondent's attorney only testified that respondent did not intend to return to Poland in the upcoming months. In sum, the March 7 order has no bearing on this case: respondent violated the Hague Convention when she removed the children in violation of Polish law, and the order did not retroactively affirm respondent's right to decide the children's country of residence.

3. Exceptions

Once a petitioner has established that the removal was in violation of a parent's custody

rights, the court must order the child's return to the country of habitual residence unless the respondent can demonstrate by a preponderance of the evidence that an exception applies. Blondin v. Dubois, 189 F.3d 240, 245 (2d Cir. 1999); see Hague Convention, Art. 13, 20; 42 U.S.C. § 11601(a)(4). The Convention identifies four such exceptions. Two of these exceptions must be proven by clear and convincing evidence: (1) there is a grave risk that the child's return would expose them to physical or psychological harm or otherwise place the child in an intolerable situation; or (2) the child's return would not be permitted by the fundamental principles relating to the protection of human rights and fundamental freedoms. See Blondin, 189 F.3d at 245. The other two exceptions need only be proven by a preponderance of the evidence: (1) the judicial proceedings were not commenced within one year of the child's abduction and the child is settled in his or her new environment; or (2) the petitioner was not actually exercising custody rights at the time of the removal. Id. at 245-46.

In addition, the Convention permits the court to take into account the preferences of an older child who objects to being returned to the country of habitual residence. See Hague Convention, art. 13; see Blondin, 189 F.3d at 246. The court may refuse to order the return of the child if it finds that the child has objected to being returned and has attained an age and degree of maturity at which it is appropriate to take his or her preferences into account. Id. The party asserting the child's objection defense has the burden of establishing the child's maturity by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2)(A).

Respondent raises two of the above exceptions: the "well-settled defense" and the "child's objection defense." These exceptions have been defined as "narrow," and "do not authorize a court

14

to exceed its Hague Convention function by making determinations . . . that remain within the purview of the court with plenary jurisdiction over the question." Blondin, 189 F.3d at 246. Furthermore, the Second Circuit has held that even when one of the exceptions has been established, "the district court is not necessarily bound to allow the child to remain with the abducting parent." Blondin, 238 F.3d at 246 n. 3 (citing Friedrich, 78 F.3d at 1067 (holding that "a federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention.")).

Respondent first raises the "well-settled defense." She argues that petitioner did not properly commence this judicial action within one year of the children's removal and the children are now well-settled in the United States. Respondent contends that she was not properly served under the New York Civil Practice Law and Rules ("CPLR"), (see Rep't Memo. in Supp. of Summ. J. 27-29) in that petitioner failed to effectuate service at respondent's place of business, dwelling place, or usual place of abode as required by CPLR § 302(2). (Id., citing N.Y.C.P.L.R. § 302(2) (McKinney 2006)).

I find respondent's arguments unavailing. Petitioner served respondent with the petition twice: once, with a person of suitable age and discretion at respondent's "usual place of abode," her sister's residence, and a second time with a person of suitable age and discretion at respondent's "actual place of business," the bakery where she worked. See Pet'r Memo. in Opp'n. to Resp't Summ. J. 22-28.) In addition, service was completed after process servers made *several* attempts to serve respondent with the petition at both her place of abode and her place of business. (Id.) Petitioner has convinced this court that her sister's residence and the bakery were the proper places

15

to serve respondent. Furthermore, the action was commenced within one year of the children's removal: the children were removed by respondent on July 15, 2005, and petitioner filed this petition on July 13, 2006. The Court therefore rejects the application of the "well-settled defense" to this case.

Respondent next raises the "child's objection" defense, in which she claims that her son, Rafal Skrodzki, objects to being returned to Poland, and has attained an age and maturity at which his objection should be taken into account. In support of this defense, respondent offers a declaration by Rafal, translated from Polish, taken when he was 12 years old.[1] (Declaration of Rafal Skrodzki ("Rafal Skrodzki Decl.")). In this declaration, Rafal describes his life in New York, and states that he attends the sixth grade and likes his classmates and teachers "a lot." (Rafal Skrodzki Decl. ¶ 3.) Rafal is close friends with a cousin who lives a few blocks away, and sees another cousin in Connecticut often. (Id. ¶¶ 5,6.) He "really like[s] being in New York" because "[t]here are so many things [he] can do here," such as going "to the beach and amusement park." (Id. ¶ 8.) Rafal prefers the United States because "places are not so crowded." (Id.) Rafal states that American movie theaters are big, with room for everyone, whereas in Poland, the theaters are very small and crowded. Rafal also says that he "would not like it if [he] had to go back to Poland" but would rather stay in New York. (Id. ¶ 8-9.)

While the Court is sympathetic to Rafal's wishes to stay in his new host country, his declaration fails to meet respondent's burden of establishing the "child's objection" defense. Rafal's declaration only expresses a well-adjustment to life in the United States and a simple preference for

---

[1] Rafal, born on June 6, 1994, is now thirteen years old.

16

the luxuries of living in New York, not an objection to returning to Poland. Even if life in the United States is moderately preferable to life in Poland for a young child, this Court must take seriously its obligation under the Hague Convention to return an abducted child to the country of its habitual residence. See Friedrich, 78 F.3d at 1068 ("even if the home [of the petitioner] were a grim place to raise a child in comparison to the pretty, peaceful streets of Ironton, Ohio, that fact would be irrelevant to a federal court's obligation under the Convention."). Because respondent has not met her burden of proving that this exception applies, the children must be returned to Poland.

## III. CONCLUSION

The preference of this Court is to see petitioner and respondent agree to an amiable custody agreement that would keep the best interests of their children in mind. Absent such an agreement, however, the Hague Convention requires that the children return to Poland so that their custody dispute can be resolved by a Polish court. Because respondent's removal of the children violated petitioner's custody rights under the Hague Convention and no exceptions apply, the children must be returned to Poland.

SO ORDERED.

Dated: July 2, 2007
Brooklyn, New York

/s/ Joan M. Azrack
_____
Joan M. Azrack
United States Magistrate Judge